**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MOEZ DHIB,<br>*Petitioner*,<br>v.<br>LUIS SOTO, *et al.*,<br>*Respondents*. | Civil Action No. 26-5198 (ZNQ)<br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court on several motions filed by Petitioner Moez Dhib, a noncitizen detained by U.S. Immigration and Customs Enforcement ("ICE") at Delaney Hall Detention Facility in Newark, New Jersey: two Motions to Reopen (ECF Nos. 12, 16), a Motion to Enforce the Court's July 1, 2026 Order (ECF No. 17), and a Motion to Reconsider or Amend that Order to direct his release (ECF No. 21). Respondents took no position on reopening (ECF No. 13) and oppose the remaining Motions (ECF Nos. 19, 22). Petitioner replied in support of his Motion to Enforce (ECF No. 20) and filed a notice of supplemental authority (ECF No. 18).[1] On July 1, 2026, the Court granted the Petition and ordered a bond hearing at which Respondents would bear the burden of proof. (ECF Nos. 10, 11.) An Immigration Judge ("IJ") held that hearing on July 9, 2026 and denied bond, finding Petitioner was a flight risk. Petitioner remains detained, now for approximately eight months, with no final order of removal. For the reasons below, and

[1] Petitioner filed his initial Petition on May 8, 2026 (ECF No. 1) and an Amended Petition on May 19, 2026 (ECF No. 6), which added a claim of unconstitutionally prolonged detention. (ECF No. 7 at 1–2 n.2.) The Court's July 1, 2026 Opinion addressed the Amended Petition, and the Court refers to the operative pleading as the "Petition." Citations to ECF pages refer to the pagination assigned by CM/ECF, and citations to the July 9, 2026 bond hearing transcript (ECF No. 19-2) refer to the transcript's own page and line numbers.

on this record, the motions are **GRANTED** to the extent necessary to order Petitioner's release, and Petitioner shall be released.

## I. BACKGROUND

Petitioner is a native and citizen of Tunisia. (ECF No. 7 at 2.) On or about June 4, 2022, he entered the United States without inspection at or near Paso de Norte, Texas, was encountered by immigration officers, and was placed in expedited removal proceedings. (*Id.*; ECF No. 7-1 at 2.) After he expressed a fear of persecution, an asylum officer found that he had established a credible fear, and the Department of Homeland Security ("DHS") issued a Notice to Appear placing him in removal proceedings under 8 U.S.C. § 1229a. (ECF No. 7 at 2; ECF No. 7-1 at 2.) On or about July 22, 2022, ICE released him on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). (ECF No. 7 at 2; ECF No. 6-1.)

Petitioner remained at liberty for more than three and a half years after his release. He asserts that during that time he lived and worked in New Jersey, reported to ICE as required, and had no criminal history. (ECF No. 6 ¶¶ 48–50; ECF No. 17 at 3.) Respondents' own Form I-213 reflects no criminal history. (ECF No. 7-1 at 2.) On February 15, 2026, Petitioner reported to the ICE Newark Field Office and was arrested. (ECF No. 7 at 2; ECF No. 7-1 at 2; ECF No. 6 ¶ 51.)[2] He has been detained at Delaney Hall since. (ECF No. 6 ¶¶ 51, 54; ECF No. 7-1 at 2.)

---

[2] Respondents' Form I-213 states that Petitioner reported to the Newark Field Office on February 15, 2026 after receiving a notice to report, and that he "failed to report for his scheduled CART appointment on October 27, 2025." (ECF No. 7-1 at 2.) The I-213 does not elaborate, and Petitioner's briefing on these motions does not address the notation. Respondents have not invoked it in their answer, at the July 9 hearing, or in opposing these motions, and the IJ did not rely on it. (*See* ECF No. 7; ECF No. 19-2 at 5:6–25, 8:2–9:11; ECF Nos. 19, 22.) The Court therefore does not treat this alleged failure to report as an individualized basis for continued detention. The Court has considered it, however, and it is one reason the Court does not rest its decision on Petitioner's assertion that he fully complied with every reporting requirement.

On March 25, 2026, an IJ denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture and ordered him removed. (ECF No. 7 at 2; ECF No. 7-6; ECF No. 6 ¶ 53.) Petitioner appealed to the Board of Immigration Appeals ("BIA" or the "Board"), and the appeal remains pending, so the order of removal is not administratively final. (ECF No. 7 at 2, 3 n.3; ECF No. 22 at 1; *see* 8 C.F.R. § 1241.1(a).) Petitioner states that he filed his notice of appeal on April 23, 2026. (ECF No. 6 ¶ 53.) Respondents report that on September 8, 2026, the Board issued a briefing schedule giving both parties until September 28, 2026 to file their briefs. (ECF No. 22 at 1.)

Petitioner challenged his detention by petition for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF Nos. 1, 6.) On July 1, 2026, the Court granted the Petition. (ECF Nos. 10, 11.) The Court concluded that Petitioner is detained under 8 U.S.C. § 1225(b)(1), that it lacks jurisdiction to review DHS's decision to end his parole, and that his continued mandatory detention without a bond hearing had become arbitrary in violation of due process: he had been held for several months in a jail-like facility after a lengthy period of parole, with no evidence of criminality or parole violations, and nothing in the record suggested that he had delayed his removal proceedings. (ECF No. 10 at 2–6.) The Court ordered a bond hearing within ten days at which Respondents would bear the burden of proving danger or flight risk by clear and convincing evidence, and it denied without prejudice Petitioner's motion for release pending final relief under *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986). (ECF No. 10 at 6–8; ECF No. 11.)

The IJ held the bond hearing on July 9, 2026. (ECF No. 13 at 1; ECF No. 19-2.) Respondents submitted a Form I-213, the March 25, 2026 removal order, and Petitioner's fee-waiver request for his appeal. (ECF No. 19-2 at 3:27–4:4.) Petitioner submitted a declaration, letters of support from a U.S. citizen sponsor, an employer, a landlord, and members of his church

community, and proof of his pending appeal. (ECF No. 17 at 3–5; ECF No. 19-2 at 3:24–25, 4:6–16, 6:13–7:17.) Respondents' counsel argued that Petitioner is "an absolute flight risk" because an IJ had denied his asylum claim and found him not credible, because relief from the Board would be difficult to obtain, and because, in counsel's view, Petitioner lacked family ties and had not documented his employment. (*Id.* at 5:6–25.) The IJ found that Respondents had met their burden by clear and convincing evidence, reasoning that Petitioner "has been ordered removed by an immigration judge after denying relief in his case" and that "the only relief is the pending appeal, which is quite speculative." (*Id.* at 8:2–6, 8:27–9:2.) The IJ acknowledged Petitioner's equities, including his ties and his U.S. citizen sponsor, but concluded that "the pending order and the speculative nature of relief on appeal" made him a flight risk. (*Id.* at 9:4–10.) The IJ found no danger to the community. (*Id.* at 9:10–11.) The IJ's written order states that the request for a change in custody status is denied because of "[f]light risk." (ECF No. 13-1 at 1.)

Petitioner then moved to reopen and to enforce the July 1 Order, arguing that the July 9 hearing was neither individualized nor fundamentally fair, that the IJ did not hold Respondents to their burden, and that the IJ was not impartial, and he asked the Court to order his release or, alternatively, to hold its own custody hearing. (ECF Nos. 12, 16, 17.) Respondents oppose, arguing that the Court may not review the IJ's bond determination, that the transcript shows the IJ placed the burden on Respondents, and that Petitioner has not shown the hearing was fundamentally unfair. (ECF No. 19 at 2–4.) In reply, Petitioner argued in the alternative that, even if the hearing was adequate, release is warranted because his continued detention lacks the justification that its length requires. (ECF No. 20 at 7–8.) On September 1, 2026, Petitioner moved under Federal Rule of Civil Procedure 60(b) to amend the July 1 Order to direct his release instead of a bond hearing, pointing to the Court's more recent practice in similar cases and to the absence of any avenue for

renewed custody review. (ECF No. 21; ECF No. 21-1 at 2–5.) Respondents oppose, arguing that Petitioner has identified no new evidence, intervening change in law, or manifest injustice. (ECF No. 22 at 2–3.) Respondents continue to maintain that Petitioner is detained under 8 U.S.C. § 1225(b)(1)(B)(ii). (*Id.* at 1.)

Petitioner has now been detained for approximately eight months, more than three of them since the July 9 hearing. Neither party has identified any change in his circumstances since that hearing other than the passage of time and the Board's briefing schedule.

## II. LEGAL STANDARD

Habeas relief extends to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has jurisdiction over the Petition because Petitioner is in custody and challenges its legality, *see Maleng v. Cook*, 490 U.S. 488, 490 (1989), and Respondents do not contend otherwise. Respondents' separate argument that 8 U.S.C. § 1226(e) bars review of the July 9 bond determination is addressed below.

As the party seeking the writ, Petitioner bears the burden of establishing his entitlement to habeas relief. *See Walker v. Johnston*, 312 U.S. 275, 286 (1941). But § 2243 separately directs the Court to "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see also Harris v. Nelson*, 394 U.S. 286, 298–300 (1969). Thus, although the ultimate burden of establishing entitlement to relief remains with Petitioner, Respondents' showing — and the evidence supporting it — bears directly on whether the record establishes a lawful basis for Petitioner's continued custody. Here, the material facts are established by the parties' submissions and by the Government's own records, including Respondents' Form I-213 and the transcript of the July 9, 2026 hearing, on which Respondents rely. (*See* ECF No. 19 at 3–4.) Respondents have not requested an evidentiary hearing or identified

a material factual dispute requiring live testimony. On this record, the Court may decide the motions on the evidence before it and dispose of the matter as "law and justice require." 28 U.S.C. § 2243; *see Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013); *Harris*, 394 U.S. at 298–300.

The Court's authority over its habeas judgment does not end when it orders a remedy. *See Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (recognizing a district court's jurisdiction to address compliance with a habeas judgment). Respondents take no position on reopening (ECF No. 13 at 1), and the motions to reopen (ECF Nos. 12, 16) are granted. The detention challenged in the Petition continues, and § 2243 directs the Court to dispose of the matter as law and justice require. The Court may therefore consider whether that detention remains lawful and, if it does not, order relief appropriate to the violation. It need not decide whether Petitioner satisfies Rule 60(b) or the reconsideration standard Respondents invoke. (ECF No. 22 at 2–3.) Respondents characterize Petitioner's motion as asking the Court to "analyze the same facts" it has already considered. (*Id.* at 3.) But the facts are not the same. When the Court issued its July 1, 2026 Opinion, Petitioner had been detained for approximately four and a half months and had received no bond hearing. He has now been detained for approximately eight months, a hearing has been held that did not end his detention, and the Board has issued a briefing schedule, but nothing in the record suggests that a decision is imminent. Those developments post-date the Court's July 1 Opinion and bear directly on the question it addressed.

## III. DISCUSSION

### A. The Statutory Basis for Detention

The Court previously concluded that Petitioner is detained under 8 U.S.C. § 1225(b)(1). (ECF No. 10 at 2–3.) Because Petitioner was taken into custody shortly after crossing the border, was processed for expedited removal, and was thereafter paroled, he remains subject to

§ 1225(b)(1) following DHS's decision to return him to custody, and that detention is mandatory through the conclusion of removal proceedings unless DHS paroles him. (*Id.*; *see Arcos Tasigchana v. Soto*, No. 25-18252, 2026 WL 266170, at *1–2 (D.N.J. Feb. 2, 2026); *Jennings v. Rodriguez*, 583 U.S. 281, 287–88, 300–03 (2018); *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016).) Respondents maintain the same position (ECF No. 22 at 1), and the Court adheres to its conclusion. The pendency of Petitioner's appeal does not change it: the order of removal is not administratively final, *see* 8 C.F.R. § 1241.1(a), and Petitioner remains in pre-removal detention.

The statutory framework also explains why the July 9 hearing took place. Respondents contend that IJs lack authority to conduct bond hearings for noncitizens detained under § 1225(b)(1). (ECF No. 7 at 3 n.4, 4 (citing 8 C.F.R. § 1003.19(h)(2)(i)(B); *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 224 (BIA 2025)).) Petitioner alleges, and Respondents have not disputed, that an IJ declined to consider bond in March 2026 for that reason. (ECF No. 6 ¶ 52.) The July 9 hearing occurred because this Court ordered it as a due process remedy, not because the governing statute or regulations provide for one.[3] The question presented is therefore not whether § 1225(b)(1) authorizes Petitioner's detention — it does — but whether his continued detention under that provision, now approximately eight months, comports with due process. On this record, it does not.

[3] Respondents' July 13, 2026 letter described the hearing as one conducted "pursuant to 8 U.S.C. § 1226(a), 8 C.F.R. § 1236." (ECF No. 13 at 1.) Respondents otherwise maintain that Petitioner is detained under § 1225(b)(1)(B)(ii). (ECF No. 22 at 1.) The Court's July 1 Opinion did not hold that § 1226(a) governs Petitioner's detention, and the Court has declined to convert detention under one statute into detention under another. *See Fajardo-Nugra v. Soto*, No. 26-975, 2026 WL 579192 (D.N.J. Mar. 2, 2026). The Court need not decide whether the label attached to the hearing was accurate, because its decision does not depend on it.

**B. The July 9 Determination Does Not Justify Petitioner's Continued Detention**

The Court's July 1 Opinion concluded that, after approximately four and a half months, the presumption underlying § 1225(b)(1) — that a noncitizen with no clear right to admission is a flight risk — no longer sufficed to justify Petitioner's detention without an individualized hearing. (ECF No. 10 at 5–6.) The hearing that followed produced an individualized determination, and Respondents rely on it. (ECF No. 19 at 3–4; ECF No. 22 at 3.) The question now is whether that determination, standing alone, justifies Petitioner's continued confinement more than three months later.

Respondents argue that the Court lacks jurisdiction to review the IJ's bond determination, that the proper avenues for challenging it are an appeal to the Board or a request for a bond redetermination on a showing of changed circumstances, and that Petitioner has not shown the hearing was fundamentally unfair. (ECF No. 19 at 2–4 (citing 8 U.S.C. § 1226(e); *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022)).) Those arguments respond to Petitioner's motion to enforce, which asks the Court to find that the IJ erred or failed to comply with the July 1 Order. The Court need not decide whether he did. The Court does not set aside or review the IJ's discretionary judgment, and it assumes without deciding that the July 9 hearing complied with the July 1 Order and was fundamentally fair.[4] Section

[4] Respondents note that Petitioner's deadline to appeal the July 9 determination to the Board had not run when they filed their opposition. (ECF No. 19 at 3.) The record does not reflect whether he appealed. An appeal would not supply the review Petitioner lacks: Respondents identify no authority under which the Board could order release on the ground that detention under § 1225(b)(1) has become unconstitutionally prolonged, and they maintain that IJs lack bond authority over § 1225(b)(1) detainees. (ECF No. 7 at 4.) Other judges in this District have found bond determinations resting on the existence of a removal order and a pending administrative appeal insufficiently individualized in the enforcement context. *See Geincharles v. Benzel*, No. 26-cv-06376 (ESK), 2026 WL 2149720, at *2 (D.N.J. July 27, 2026) (granting a motion to enforce); *see also* ECF No. 18-1. The Court does not reach that question.

1226(e) does not bar the question the Court does decide: whether Petitioner's continued detention, now of substantial length, remains consistent with due process. *See Jennings*, 583 U.S. at 295–96 (explaining that § 1226(e) does not bar challenges to the extent of the Government's detention authority); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (holding that § 1226(e) does not bar constitutional challenges to the statutory framework authorizing detention). Courts in this District have recognized that a fair hearing does not end the inquiry, because continued detention must still be supported by a current, individualized justification. *See Rodriguez v. Bondi*, No. 26-cv-00902, 2026 WL 1030603, at *2 (D.N.J. Apr. 16, 2026); *Perez Sierra v. Bondi*, No. 25-cv-18829, 2026 WL 497070, at *4–5 (D.N.J. Feb. 23, 2026) (ordering release after a court-ordered bond hearing, based on the length of detention, the absence of imminent removal, and the lack of an individualized justification).

What matters here is that Petitioner has no ordinary mechanism for further individualized review. Respondents identify two avenues for challenging an adverse bond determination: an appeal to the Board and a request for a subsequent bond redetermination "to the extent the detainee can show changed circumstances." (ECF No. 19 at 2.) The regulation governing the latter permits a subsequent redetermination only "upon a showing that the [noncitizen's] circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). Even assuming that regulation is available to a detainee held under § 1225(b)(1), a point Respondents' own position on IJ bond authority calls into question, it contemplates further review only upon a material change; it does not provide for review as detention lengthens. Respondents do not contend that Petitioner's circumstances have materially changed, and Petitioner represents that they have not: he still has no criminal record, he has the same community ties, and his appeal had not advanced as of September 1, 2026. (ECF No. 21-1 at 5.) The Board has since issued its briefing

schedule (ECF No. 22 at 1), but Respondents did not otherwise respond to Petitioner's representation. (*See* ECF No. 22.) Petitioner therefore has no meaningful mechanism for renewed individualized custody review absent further intervention by this Court.

That is the circumstance the *German Santos* inquiry addresses. Detention that is permissible when it begins may become arbitrary as it lengthens, and whether it has done so turns on the facts as they stand when the question is asked. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020). Respondents' opposition does not identify a current, individualized justification for Petitioner's continued confinement. It rests on the proposition that Petitioner received a bond hearing and that the IJ found him to be a flight risk. (ECF No. 19 at 3–4; ECF No. 22 at 2–3.) Respondents identify no fact bearing on flight risk or dangerousness that post-dates that hearing, and they offer no evidence that conditions of release short of detention — such as reporting requirements or electronic monitoring — would be inadequate to secure Petitioner's appearance, although Petitioner pressed the point and Respondents did not answer it. (ECF No. 17 at 12–13; ECF No. 20 at 5.) Nor do they contend that Petitioner is dangerous; the IJ found that he is not. (ECF No. 19-2 at 9:10–11.)

The reason the IJ gave — that Petitioner has been ordered removed and that relief on appeal is "quite speculative" (ECF No. 19-2 at 8:27–9:2) — is also not a circumstance that the passage of time can test or revisit. It was true on July 1, when the Court concluded that detention without individualized review had become arbitrary. It was true on July 9. And it will remain true for as long as the Board's review lasts. A determination that rests on that circumstance alone cannot supply an enduring justification for detention that continues to grow longer, because it would justify detention for as long as an appeal remains pending, however long that may be. It also sits uneasily with the principle that a noncitizen's good-faith pursuit of review is not held against him

in assessing the reasonableness of his detention. *German Santos*, 965 F.3d at 211. And it describes Petitioner no differently from any other detainee whose claims have been denied by an IJ and whose appeal is pending. *See Perez Sierra v. Margolin*, No. 25-18829, 2026 WL 800158, at *3–4 (D.N.J. Mar. 23, 2026) (concluding that the existence of a removal order and the pendency of an administrative appeal are generalized circumstances that do not supply an individualized justification for prolonged detention). The Court does not decide whether the IJ's assessment was correct when made. It decides that the assessment cannot, standing alone, bear the weight Respondents place on it after approximately eight months of detention.

#### ***1. Petitioner Is Entitled to Due Process***

The Due Process Clause applies to all persons within the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). *Jennings* held that § 1225(b) does not, as a matter of statutory construction, entitle detainees to periodic bond hearings; it did not hold that detention under that provision is immune from constitutional review, and it remanded the constitutional claims. 583 U.S. at 312. As the Court explained on July 1, although noncitizens detained under § 1225(b)(1) have only the rights regarding admission that Congress has provided by statute, it does not follow that the Due Process Clause is silent about their liberty following prolonged detention, especially where, as here, the noncitizen was previously permitted to be at liberty on parole for a considerable period. (ECF No. 10 at 4 (quoting *Martinez Olivo v. Soto*, No. 26-2122, 2026 WL 1265500, at *2–3 (D.N.J. May 8, 2026)).) The Third Circuit's decision in *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026), concerned detention under § 1225(b)(2)(A) of noncitizens with long residence and did not decide what process a § 1225(b)(1) detainee is due. The Court cites it for the framework the Third Circuit applied to detention without a bond hearing

under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and for its recognition that established connections to this country carry constitutional weight. *Buele Morocho*, 2026 WL 2546223, at *8 (acknowledging that petitioners that have lived in the United States for a number of years "have 'established connections' in the country and are entitled to due process rights beyond those provided to noncitizens at the border").

Respondents invoke the "entry fiction" in describing the effect of Petitioner's parole. (ECF No. 7 at 4.) They do not argue, however, that the fiction forecloses a due process challenge to prolonged detention; they acknowledge that the Due Process Clause prohibits unduly prolonged detention and argue instead that Petitioner's detention had not yet become unreasonably long. (*Id.* at 5–6.) The Court has already rejected that argument as to the period before July 1, and the entry fiction does not alter the analysis. It was applied in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), to a noncitizen apprehended within twenty-five yards of the border who sought further review of his expedited removal and asylum determination. That case did not involve a noncitizen who had lived at liberty in the United States for years and challenged prolonged civil confinement, and it recognized that noncitizens "who have established connections in this country have due process rights in deportation proceedings." *Id.* at 107; *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The Third Circuit has confirmed that *Thuraissigiam* does not displace those protections. *Buele Morocho*, 2026 WL 2546223, at *8. *Shaughnessy v. Mezei*, 345 U.S. 206 (1953), and *Castro*, 835 F.3d at 439–49, concerned the process owed an arriving noncitizen in the admission and exclusion context, and courts that have considered the question

have held that they do not foreclose an as-applied challenge to prolonged detention during removal proceedings.[5]

This case does not require the Court to decide whether every noncitizen detained under § 1225(b)(1) has the same due process interest as a noncitizen who has lived here for years. Petitioner was released in July 2022 and remained at liberty for more than three and a half years, until DHS re-detained him in February 2026. Respondents dispute the strength of his family ties and employment history (ECF No. 19-2 at 5:15–22), but they do not dispute that he lived in the community throughout that period or that he has no criminal history, and the IJ acknowledged his ties and his U.S. citizen sponsor. (*Id.* at 9:4–7; ECF No. 7-1 at 2.) Those connections, and the fact that DHS itself released him and allowed him to remain at liberty, distinguish his liberty interest from that of a person apprehended immediately upon crossing the border and held without release. The reasoning of *Buele Morocho* and *Plasencia* rests on a noncitizen's ties to this country, not the manner of entry.

### 2. *The Mathews and German Santos Factors*

Neither *Buele Morocho* nor *German Santos* arose under § 1225(b)(1): *German Santos* concerned prolonged detention under § 1226(c), and *Buele Morocho* concerned noncitizens who entered without inspection. But the due process inquiry does not depend on the statutory label attached to a detention. The Supreme Court has sustained mandatory detention during removal proceedings for the "brief period" necessary to complete them, *Demore*, 538 U.S. at 513, and the Third Circuit's as-applied decisions build on that premise. *Diop v. ICE/Homeland Sec.*, 656 F.3d

[5] *See, e.g., K-S- v. Warden, FCI-Berlin*, No. 25-cv-288-SE, 2025 WL 3671774 (D.N.H. Dec. 17, 2025), *appeal dismissed sub nom. K-S- v. Ackley*, 26-1157, 2026 WL 2444908 (1st Cir. Apr. 1, 2026) (§ 1225(b)(1)(B)(ii) detainee); *Destino v. FCI Berlin, Warden*, No. 1:25-cv-374-SE-AJ, 2025 WL 4010424, at *3–14 (D.N.H. Dec. 24, 2025), *appeal dismissed sub nom. Destino v. Ackley*, No. 26-1181, 2026 WL 2445577 (1st Cir. July 27, 2026).

221, 232–35 (3d Cir. 2011); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–13 (3d Cir. 2020). Although neither the Supreme Court nor the Third Circuit has directly addressed the outer limit on detention under § 1225(b)(1), courts in this District and Circuit have applied the *German Santos* factors to prolonged detention under § 1225(b), including detention of credible-fear applicants, and this Court applied them to Petitioner on July 1. (ECF No. 10 at 4–6.)[6]

Those decisions assess a due process challenge to detention without a bond hearing under *Mathews*, 424 U.S. at 335, which considers (1) the private interest affected, (2) the risk of erroneous deprivation and the value of additional safeguards, and (3) the Government's interest, *Buele Morocho*, 2026 WL 2546223, at *9, and, for prolonged detention, the duration of detention, the likelihood that it will continue, the reasons for delay, and the conditions of confinement, *German Santos*, 965 F.3d at 210–11. Applied to the record as it now stands, each consideration points the same way.

**a. *Private interest***

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner had been confined for approximately four and a half months when the Court issued its July 1 Opinion. He has now been confined in a civil detention facility for approximately eight months, more than three of them since the July 9 hearing.[7] His interest is

[6] *See Martinez Olivo*, 2026 WL 1265500, at *2–3; *A.J.R. v. Rokosky*, No. 25-17279 (RMB), 2026 WL 592136 (D.N.J. Mar. 3, 2026); *Farias-Ortega v. Soto*, No. CV 25-17848 (RK), 2026 WL 1587300 (D.N.J. June 3, 2026); *Maksaddzhon A. v. Pittman*, No. CV 25-13734 (MCA), 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025); *C.B. v. Oddo*, No. 3:25-cv-00263, 2025 WL 2977870, at *5 (W.D. Pa. Oct. 22, 2025); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825–26 (W.D. Pa. 2025).

[7] Respondents note that Petitioner was also detained for approximately forty-eight days in 2022, before his release on parole. (ECF No. 7 at 6 n.7.) The Court's analysis rests on his current period of detention, which is sufficient by itself.

substantial: he lived at liberty in the community for more than three and a half years after DHS released him, and he was re-detained when he reported to the Newark Field Office on February 15, 2026. (ECF No. 6 ¶ 51; ECF No. 7-1 at 2.)

The Court adopts no bright-line rule. Duration is the most significant factor. In the § 1226(c) context, the Third Circuit has explained that detention becomes increasingly suspect after five months and will in most cases become unreasonable sometime between six months and one year. (ECF No. 10 at 4 (citing *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433–34 (3d Cir. 2026)).) Detention under § 1225(b)(1) rests on a weaker presumption than detention under § 1226(c) and should therefore become suspect sooner. (*Id.* at 5.) Petitioner's detention has now passed the point at which § 1226(c) detention becomes suspect and falls within the range in which such detention will in most cases become unreasonable. No particular number of months is a threshold; length becomes especially weighty when combined with the likelihood that detention will continue and the absence of a current, individualized justification. Both are present here.

Petitioner's detention is likely to continue for as long as his appeal remains pending before the Board. *See German Santos*, 965 F.3d at 211–12 (recognizing that a detainee with an appeal pending would remain detained for as long as the Board takes to decide it). Respondents report that the Board issued a briefing schedule on September 8, 2026, giving the parties until September 28, 2026 to file their briefs. (ECF No. 22 at 1.) Respondents do not suggest when the Board will rule, and nothing in the record indicates that a decision is imminent. The Court cannot predict what will follow a decision, but nothing suggests that Petitioner's detention will end soon. Respondents attribute no delay to Petitioner, and nothing in the record suggests that he has delayed or prolonged his removal proceedings. (*See* ECF No. 10 at 6.) Petitioner's pursuit of his appeal cannot be held

against him. *German Santos*, 965 F.3d at 211. As to conditions, the Court previously found that Petitioner is held in a jail-like facility (ECF No. 10 at 6, 7 n.2), and Respondents have not suggested that his conditions have changed. The duration of Petitioner's detention, and the likelihood that it will continue for months more if not longer, weigh heavily in his favor.

**b. *Risk of erroneous deprivation***

That an IJ held a bond hearing on July 9 does not mean the risk of erroneous deprivation is low; the risk remains substantial. An IJ has assessed Petitioner's custody once, but only because this Court ordered it. Respondents maintain that IJs lack bond jurisdiction over § 1225(b)(1) detainees, *see* 8 C.F.R. § 1003.19(h)(2)(i)(B); *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 224 (BIA 2025), so the only other avenue for release is DHS parole, 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5, which is discretionary and administered by the agency that detains him. Respondents do not suggest that DHS has reconsidered parole for Petitioner.[8] That discretion is no substitute for a neutral decisionmaker. *Cf. Buele Morocho*, 2026 WL 2546223, at *28. Beyond the single July 9 determination, there is no mechanism by which Petitioner's custody will be assessed again, and Respondents do not suggest that any change in his circumstances would trigger one. The risk that Petitioner will remain confined after any justification for his detention has weakened, or if it was never sufficient to begin with, is therefore real.

That risk is heightened by the nature of the determination on which Respondents rely, which rests on a circumstance common to every detainee whose claims have been denied by an IJ

---

[8] Respondents do not argue that Petitioner was required to request parole from DHS before seeking habeas relief, and the Court would not require it. As the Court explained on July 1, it lacks jurisdiction to review DHS's decision to end Petitioner's parole (ECF No. 10 at 3–4), and nothing in this Opinion disturbs that conclusion. Petitioner's claim is that parole review by the detaining agency is an inadequate substitute for neutral review of whether his continued detention serves a legitimate purpose.

and whose appeal is pending. *See Perez Sierra v. Margolin*, 2026 WL 800158, at *3–4. The individualized facts in this record, by contrast, point toward release. Petitioner has no criminal history, and the IJ found that he is not dangerous. (ECF No. 19-2 at 9:10–11; ECF No. 7-1 at 2.) DHS itself released him in 2022 and allowed him to remain at liberty for more than three and a half years. He identified a U.S. citizen sponsor, an employer, and housing in New Jersey, and the IJ acknowledged his equities. (ECF No. 19-2 at 6:13–7:7, 9:4–7.) And his pending appeal gives him a continuing reason to remain available. The only other individualized fact in Respondents' own records that bears on his appearance is the Form I-213 notation described above, on which neither Respondents nor the IJ has relied. (*See supra* note 2.)

The Court does not find that these facts compel a particular result on flight risk. It finds that they, together with the absence of any current justification offered by Respondents, make the risk of continued erroneous deprivation substantial. And the probable value of the additional safeguard Respondents might offer — another hearing before an IJ — is low. Respondents have already had a hearing at which they bore the burden, and they have since had two further opportunities, in opposing the motion to enforce and the motion to reconsider, to identify a current basis for continued detention. The basis they have offered is one that no hearing could influence while the appeal remains pending.

**c. *Government interest***

The Government's interest in securing the appearance of noncitizens in removal proceedings is substantial, and Congress's decision to mandate detention under § 1225(b)(1) reflects it. *See Demore*, 538 U.S. at 531. But detention serves the legitimate interests of preventing danger and flight, *Zadvydas*, 533 U.S. at 690, and the mandatory-detention command does not itself establish that Petitioner's continued confinement, after approximately eight months, remains

necessary to serve them. No one contends that Petitioner is dangerous. As to flight, Respondents' showing consists of the order of removal and the pending appeal, which does not distinguish Petitioner from other detainees and does not vary with the time he is held. Respondents have not identified why any condition or combination of conditions short of detention would be inadequate to secure his appearance, and they do not argue that release on conditions would impose an undue administrative burden. (*See* ECF No. 20 at 5; ECF Nos. 19, 22.)

The Court has considered Respondents' reliance on decisions holding that detention of a few months under § 1225(b) had not become prolonged, and on decisions upholding longer periods. (ECF No. 7 at 5–6 (citing, *e.g.*, *Faqirzada v. Rokosky*, No. 25-16639 (MAS), 2026 WL 63614 (D.N.J. Jan. 8, 2026)).) The Court rejected Respondents' contention that Petitioner's detention had not yet become unreasonable on July 1. (ECF No. 10 at 6.) *Faqirzada* addressed duration alone, involved a detention of less than three months, did not apply *Mathews*, and preceded *Buele Morocho*. Petitioner has now been detained for approximately eight months. The inquiry under *German Santos* is individualized and fact-specific. And as the Court has explained, detention under § 1225(b)(1) rests on a weaker presumption than detention under § 1226(c) and therefore becomes suspect sooner. (ECF No. 10 at 5.)

The *Mathews* factors weigh in Petitioner's favor. The constitutional deficiency is not simply the length of Petitioner's detention. It is the combination of substantial and continuing detention, the likelihood that it will persist through the Board's review, the absence of a meaningful mechanism for renewed custody review, and the absence of a sufficiently current, individualized justification for continued confinement. Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment as applied to him. The Court has reached the same conclusion with respect to other noncitizens held under § 1225(b)(1) who had no criminal history and no final order

of removal, and it has ordered their release rather than a bond hearing. *See Arshad v. Benzel*, 26-6697 (ZNQ), 2026 WL 3015541 (D.N.J. Oct. 7, 2026). Petitioner also points to that more recent practice as an independent ground for amending the July 1 Order. (ECF No. 21-1 at 2–4; ECF No. 21-2.) Nonetheless, the Court does not rest its decision on that practice, which is not itself a change in controlling law or new evidence bearing on Petitioner's detention. It rests on the record described above, which includes developments that post-date the July 1 Opinion. Because the Court grants relief on due process grounds, it does not reach Petitioner's remaining claims or arguments.[9]

The Court's holding is narrow. The Court does not find that § 1225(b)(1) is facially unconstitutional, that every noncitizen detained under § 1225(b)(1) is entitled to a bond hearing or to release, or that detention becomes unconstitutional after a fixed number of days. Nor does the Court determine Petitioner's removability, the merits of his applications for asylum, withholding of removal, or protection under the Convention Against Torture, or the merits of his pending appeal. And the Court does not hold that the July 9, 2026 hearing was legally deficient, that the IJ failed to comply with the July 1 Order, or that the IJ's flight-risk determination was erroneous. The Court holds only that, on this record, the combination of the duration of Petitioner's detention, the likelihood that it will continue, the absence of a final order of removal, the lack of a meaningful mechanism for renewed custody review, and the absence of a sufficiently current, individualized justification for continued confinement has rendered his detention constitutionally unreasonable.

---

[9] The Court's July 1 Opinion granted the Petition on Petitioner's prolonged-detention claim. Because the relief ordered here rests on due process, the Court does not reach the Petition's remaining claims, Petitioner's argument that the IJ who conducted the July 9 hearing was not impartial (ECF No. 17 at 14–19), or his renewed assertions regarding his health (ECF No. 21-1 at 4).

### C. Remedy

The Court has broad authority to fashion habeas relief "as law and justice require," 28 U.S.C. § 2243, and release is the traditional remedy for unlawful custody, *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), although the Court may tailor relief to the violation. The July 1 Order tailored relief to the record then before the Court: a hearing at which Respondents would bear the burden. Petitioner now seeks release or, alternatively, a custody hearing before this Court at which Respondents would bear the burden. (ECF No. 17 at 19–23; ECF No. 20 at 9.) Respondents ask only that the motions be denied. (ECF No. 19 at 4; ECF No. 22 at 3.) On this record, another hearing, whether before an IJ or before this Court, is not appropriate, for three reasons.

First, Respondents have had the opportunity that the July 1 remedy afforded: a hearing at which they bore the burden of establishing, by clear and convincing evidence, that Petitioner's continued detention was necessary. They have since had two further opportunities, in opposing the motion to enforce and the motion to reconsider, to identify an individualized basis for continued detention. They have relied on the July 9 determination, which rests on the pendency of the removal order and the appeal, and have identified nothing current. Due process does not require a further opportunity for the Government to develop an individualized justification after it has already had several chances to do so and has identified only that one.

Second, a further hearing would not remedy the deficiency on this record. The deficiency is not that Petitioner was denied a hearing; he received one. It is that his detention has continued, and will continue for as long as his appeal is pending, without any mechanism for renewed review and without a current, individualized justification. A second hearing before an IJ would turn on the same circumstances as the first — a removal order and a pending appeal — and Respondents have identified no authority that would require further hearings as detention lengthens. If Petitioner

were again denied bond on that basis, the result would be continued confinement on a justification that cannot, standing alone, support it. A hearing before this Court, the alternative Petitioner proposes, would require the Court to make the individualized determination that Respondents have had every opportunity to support on the record they chose to present, and it would further delay relief from detention that is already prolonged. *Cf. Rodriguez*, 2026 WL 1030603, at *2 (explaining that, even after a hearing, continued detention must remain tethered to its purposes and supported by a current, individualized justification).

Third, further proceedings would prolong Petitioner's confinement notwithstanding that Respondents, after being afforded the opportunity, have identified no current, individualized basis for it. Release imposes no comparable cost: Petitioner's removal proceedings will continue, and nothing in this Opinion prevents the Government from taking Petitioner back into custody if and when he becomes subject to a final order of removal, or from seeking his re-detention on a proper showing before a neutral decisionmaker.[10]

Petitioner also refers to his earlier motion for release under *Lucas v. Hadden*, 790 F.2d 365, 367–68 (3d Cir. 1986), and asserts that the health issues he described in that motion have worsened. (ECF No. 21-1 at 4.) To the extent that reference renews the *Lucas* request the Court denied without prejudice on July 1 (ECF No. 10 at 6–8), the request is denied as unnecessary. Release rests on the continuing-detention analysis of *German Santos* and the Court's July 1 due process

[10] Section 1252(f)(1) does not limit the relief ordered here. That provision withholds authority to enjoin or restrain the operation of the detention and removal provisions of 8 U.S.C. §§ 1221–1232 "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). The relief here is confined to a single individual in removal proceedings. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Release under this Opinion shall not be construed as an admission into the United States for immigration purposes, and it provides no legal status that Petitioner did not already possess. (*See* ECF No. 10 at 6 n.1.)

framework, not on the extraordinary-circumstances standard that governs bail pending habeas review. *See Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992).

The Court imposes no conditions on release beyond those that existed before Petitioner's detention. Respondents have identified no evidence that Petitioner is a danger, the IJ found that he is not, and the only basis Respondents have offered for finding him a flight risk — the pending removal order and appeal — cannot, standing alone, justify his continued confinement. His pending appeal also gives him a continuing reason to remain available. The accompanying Order bars re-arrest under § 1225(b) or § 1226(a) for fourteen days to ensure full effectuation of this judgment, as in *Hueso v. Soto*, No. 26-1455, 2026 WL 539271 (D.N.J. Feb. 26, 2026), and *Fajardo-Nugra*, 2026 WL 579192, requires that any later detention comply with all statutory, regulatory, and constitutional requirements, enjoins Respondents from transferring Petitioner outside the District of New Jersey pending his release, and retains jurisdiction to enforce the judgment.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motions to Reopen (ECF Nos. 12, 16) are **GRANTED**, and his Motion to Enforce (ECF No. 17) and Motion to Reconsider or Amend (ECF No. 21) are **GRANTED** to the extent necessary to order his release. Petitioner's alternative request for a custody hearing before this Court and any request for relief under *Lucas v. Hadden* are **DENIED** as unnecessary. Petitioner shall be **RELEASED**.

An appropriate Order follows.

Date: October 16, 2026

s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**